[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 24, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13281
Non-Argument Calendar

_____

D. C. Docket No. 96-00447-CV-J-32-HTS

CARLA C. HIGGINBOTHAM, et al.,

Plaintiff-Counter-Defendants,

EVEREAN MITCHELL,

Plaintiff-Appellant,

versus

FORD MOTOR CREDIT COMPANY,

Defendant-Counter-Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 24, 2008)

Before BIRCH, DUBINA and WILSON, Circuit Judges.

PER CURIAM:

Everean Mitchell ("Mitchell") appeals the district court's grant of summary judgment against her claim under the Consumer Leasing Act ("CLA"), 15 U.S.C. §1667 *et seq*. The district court held that Mitchell lacked standing because she had not suffered an injury in fact. We reverse and remand.

## I. BACKGROUND

On May 21, 1996, Mitchell entered into a closed-end lease agreement[1] with Appellee Ford Motor Credit Company ("Ford") for a 1996 Ford Taurus. Under the lease, Mitchell was obligated to pay twenty-four monthly payments. After making twenty-one monthly payments, Mitchell returned the Taurus to the dealer and terminated her lease approximately three months early. Thereafter, Ford assessed damages of $4,772.16 against Mitchell, which Ford computed by using

---

[1] The Third Circuit provided the following apt description of a "closed-end lease":

A closed-end lease is a lease in which the lessee is not responsible for the difference if the actual value of the vehicle at the scheduled end of the lease is less than the residual value, but the lessee may be responsible for excess wear and excess mileage charges and for other lease requirements. In contrast, an open-end lease is one in which the lessee's liability at the end of the lease term is based on the difference between the residual value and its realized value. The residual value of a vehicle is the projected value of the vehicle at the end of the lease that is assigned at the beginning of the lease.

*Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 212 n.2 (3d Cir. 2004) (internal citations and quotation marks omitted).

the early termination formula in the lease agreement. On October 14, 1998, Ford filed suit against Mitchell in Georgia state court seeking to collect the early termination charge. Mitchell retained counsel to defend herself and counterclaimed against Ford, alleging that Ford's early termination charge was unreasonable pursuant to the CLA, 15 U.S.C. § 1667b(b).

On July 30, 1999, Ford amended its complaint to seek a lesser amount of damages: $1,356.21. This amount included the three unpaid lease payments, excess mileage charges, and tax on the excess mileage charges, but did not include the early termination charge.[2]

On August 20, 1999, Mitchell, along with two other plaintiffs, joined Carla C. Higginbotham in filing the First Amended Complaint in this action. Like Mitchell's state court counterclaim, the First Amended Complaint sought, inter alia, statutory and actual damages under the CLA for Ford's unreasonable early termination charge. Ford counterclaimed for the $1,356.21. Ford and Mitchell subsequently entered into a tolling agreement that tolled the parties' claims in the Georgia state court action during the pendency of the instant action.

---

[2] Ford asserts that it amended the complaint because during the discovery process, it was revealed that Mitchell and Ford had previously agreed to an amount of $1,356.21 owed under the lease agreement. Mitchell disputes that she entered into such an agreement. (*See* Mitchell's Reply Brief at 2.)

On August 24, 2004, the district court granted summary judgment against Mitchell due to Mitchell's lack of standing. The court held that Mitchell suffered no injury because Ford was no longer pursuing the early termination charge.

## II. DISCUSSION

The question presented here is whether Mitchell sustained an injury under the CLA when Ford assessed the allegedly unreasonable early termination charge and instituted litigation against Mitchell to collect the charge. We review de novo determinations of standing. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005).

The Constitution of the United States limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). A plaintiff bears the burden of showing "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1303 (11th Cir. 2007) (internal quotation marks omitted). An "injury in fact" requires

4

the plaintiff to "show that he personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982) (internal quotation marks omitted).

In 1976, Congress passed the CLA as an amendment to the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* Section 1667b(b) allows penalties for early termination to be specified in a lease, but only if such penalties are "reasonable:"

(b) Penalties and charges for delinquency, default, or early termination

Penalties or other charges for delinquency, default, or early termination may be specified in the lease but only at an amount which is *reasonable in the light of the anticipated or actual harm caused by the delinquency, default, or early termination, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.*

15 U.S.C. § 1667b(b) (emphasis added).

CLA plaintiffs suing under § 1667b may seek relief under TILA's § 1640 damages provisions. *See* 15 U.S.C. § 1667d(a). Specifically, § 1640(a)(1) provides for actual damages, and § 1640(a)(2) provides for statutory damages:

(a) Individual or class action for damages; amount of award; factors determining amount of award

Except as otherwise provided in this section, any creditor who fails to

5

comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

**(1)** any actual damage sustained by such person as a result of the failure;

**(2)(A)** (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000, or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000; or

**(B)** in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor;

15 U.S.C. § 1640(a)(1)-(2)(B).

We have explained, in the TILA disclosure context, that under § 1640, "statutory damages provide at least a partial remedy for all material TILA violations; however, actual damages ensure that consumers who have suffered actual harm due to a lender's faulty disclosures can be fully compensated, even if the total amount of their harm exceeds the statutory ceiling on TILA damages." *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 (11th Cir. 2001) (en banc). The same

6

reasoning applies here, i.e., statutory damages are available upon a material CLA violation and actual damages are available to compensate a CLA plaintiff's actual harm.

No relief is available, however, if a creditor takes the necessary steps to correct its errors. Specifically, the creditor must undertake certain corrective actions that are: (1) within sixty days after discovering an error; *and* (2) prior to the institution of an action:

(b) Correction of errors

A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E of this subchapter, if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 1607(e)(1) of this title or through the creditor's or assignee's own procedures, and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

15 U.S.C.A. § 1640(b).[3]

---

[3] Section 1640 also precludes liability where the creditor can show, by a preponderance of the evidence, that the noncompliance was a result of an unintentional and "bona fide error." 15 U.S.C. § 1640(c). Examples of a bona fide error include clerical errors, calculation errors, and computer malfunctions. *Id*. Ford has made no claim that § 1640(c) is implicated here.

In this case, it is undisputed that Ford applied an early termination charge to Mitchell and pursued recovery of that charge by instituting an action in Georgia state court against Mitchell. If it is shown that Ford's early termination charge was, in fact, unreasonable under 15 U.S.C. § 1667b(b), Mitchell suffered an injury in this case. Once Ford applied the early termination charge to Mitchell and failed to take the requisite corrective actions under § 1640(b), Mitchell incurred an injury for which at least statutory damages were recoverable.[4]

The Third Circuit's reasoning in *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209 (3d Cir. 2004) supports our conclusion that Mitchell sustained an injury. There, Miller argued he had standing to challenge an allegedly unreasonable early termination provision in his automobile lease. *Id*. at 220. Nissan countered that there was no injury because it did not apply the early termination provision in assessing a charge to Miller; instead, Nissan opted to derive the charge from Miller's remaining unpaid payments. *Id*. The Third Circuit held there was no injury because Nissan never *applied* the early termination provision to Miller. *Id*. at 224, 225. The same conclusion was drawn

---

[4] Mitchell also seeks actual damages for the injury she incurred from Ford's unreasonable early termination charge. Specifically, she states that she incurred actual harm by Ford reporting her as delinquent to credit agencies and in having to defend herself in the initial action brought by Ford. (*See* Mitchell's Initial Brief at 14.) We do not reach whether Mitchell's claim for actual damages are sustainable as the district court has not had an opportunity to address them.

8

in *Kedziora v. Citicorp Nat'l Servs.*, 780 F. Supp. 516, 523 (N.D. Ill. 1995) ("[A] plaintiff bringing a claim under Section 1667b(b) has no standing to litigate the reasonableness of a lease provision that caused him or her no actual injury because *it never became applicable to him or her*." (emphasis added)).

The crux of the standing analysis in both *Miller* and *Kedziora* turned on whether the defendant lessor actually applied the early termination provision to the plaintiff lessee. Because the defendant lessor never applied an early termination charge in either case, the plaintiff lessee failed to sustain an injury in fact. In stark contrast, Ford applied the early termination charge to Mitchell and instituted a legal action against Mitchell to collect the charge.

Moreover, Ford's subsequent decision to not pursue the early termination charge did not eviscerate the injury that Mitchell had already incurred, just as it did not moot this case. Mitchell's claims for monetary damages are retrospective in nature. "[A] claim for monetary damages looks back in time and is intended to redress a past injury." *Smith v. Allen*, 502 F.3d 1255, 1267 n.6 (11th Cir. 2007) (internal quotation marks omitted); *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) (same); *see also Herron v. Beck*, 693 F.2d 125, 127 n.3 (11th Cir. 1982) (holding that transfer of a prisoner to a different facility mooted some or all of his claims for equitable relief against practices at the

9

original prison, but did not moot his claim for damages); 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3533.3 (2007) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable."). Thus, Mitchell's claim for damages function to preclude mootness, even if the district court ultimately concludes that Ford's decision to not pursue an early termination charge renders her claims for equitable relief moot.[5]

### III. CONCLUSION

For the foregoing reasons, we reverse and remand for further proceedings.

REVERSED AND REMANDED.

---

[5] We do not reach whether Mitchell's claims for equitable relief are moot as the district court has not had an opportunity to address the question.